CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
MAY 27 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 4:05-cr-00025 |
| | ) | Civil Action No. 4:08-cv-80030 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Hon. Jackson L. Kiser |
| RODRICKUS ANTONIO JAMISON. | ) | Senior United States District Judge |

Petitioner Rodrickus Antonio Jamison, a federal inmate proceeding pro se, brings this action as a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. Jamison alleges several instances of ineffective assistance of counsel, various due process violations, and further alleges that his guilty plea was not knowing and voluntary. Respondent filed a Motion to Dismiss and Jamison responded, making the matter ripe for disposition. Upon review of the submissions of the parties and the underlying criminal record, Criminal Case No. 4:05-cr-00025, I find that Jamison's plea was knowing and voluntary and that he waived his other claims in his plea agreement. Accordingly, I find that respondent's Motion to Dismiss must be granted.

I.

On August 25, 2005, Jamison was named in a four-count indictment in the Western District of Virginia that charged him with distributing a measurable quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts One and Four), and distributing more than five grams of a mixture or substance containing cocaine base, in violation of U.S.C. §§ 841(a)(1) and (b)(1)(B) (Counts Two and Three). The indictment arose from a joint investigation by the Martinsville Police Department, Patrick County Sheriff's Office, and the Virginia State Police, and involved four controlled buys of cocaine base from Jamison.

On April 27, 2006, Jamison pleaded guilty to Count Two of the indictment. By final judgment order, entered August 3, 2006, I sentenced Jamison to a total term of 188 months incarceration. The United States Court of Appeals for the Fourth Circuit affirmed Jamison's conviction and sentence by unpublished per curiam opinion, entered July 10, 2007. Jamison filed the current § 2255 Motion on February 25, 2008. Jamison collaterally attacks his sentence on four grounds: (1) counsel provided ineffective assistance by failing to review the pre-sentence report with Jamison, failing to make suggested objections to the pre-sentence report, failing to provide and review discovery material, failing to communication with Jamison during the appeals process, waiving Jamison's speedy trial rights, failing to inform Jamison that he would likely be sentenced as a career criminal, and inducing Jamison to plead guilty to an ambiguous plea agreement; (2) Jamison's due process rights were violated when the government agreed not to file for an enhancement but did so anyway; (3) Jamison's guilty plea was not knowing and voluntary because counsel failed to explain Jamison's possible career offender status and misadvised Jamison of the maximum sentence that he could receive if they proceeded to trial; and (4) the speedy trial act is non-waivable. Jamison requests an evidentiary hearing as to his claims.

## II.

To state a claim for relief under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 (2006). Jamison bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir.

1965); Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

### III.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See, e.g., United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver).

The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." Id. at 731-32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22; see also United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If I determine that petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," then I may dismiss the § 2255 motion without a hearing. Lemaster, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy–specifically, whether the

3

district court questioned the defendant about the . . . waiver–the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting United States v. General, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. I must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver.[1] Attar, 38 F.3d at 732; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); see also Blick, 408 F.3d at 169-71. Thus, in addition to evaluating the validity of Jamison's guilty plea and waiver of § 2255 rights, I must determine whether each of his § 2255 claims fall within the scope of that waiver.

Here, the record fully establishes that Jamison knowingly and intelligently entered a valid guilty plea and waived his right to collaterally attack his sentence, including any proceeding brought

---

[1] In Lemaster, the court implicitly acknowledged that these discrete claims would also be considered outside the scope of a valid plea agreement waiver of § 2255 rights. 403 F.3d at 220 n.2.

under § 2255. In his plea agreement, Jamison acknowledged that counsel informed him of the nature of the charges and the elements of the charges and that he "had all of [his] rights explained," and that he was "knowingly waiv[ing] and giv[ing] up these valuable constitutional rights." (Plea Agreement at 2.) Jamison further waived "any claim that I may have for ineffective assistance of counsel known and not raised by me with the Court at the time of sentencing." (Plea Agreement 11.) Moreover, Jamison specifically agreed to "waive [his] right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon [him] by the Court." (Plea Agreement at 6.) The language and meaning of the § 2255 waiver is clear and unmistakable, and both Jamison and his attorney represented by their initials on each page of the plea agreement and their signatures at the conclusion of the plea agreement that Jamison had been fully advised of, and understood, its terms. Additionally, Jamison does not adequately dispute that he understood the collateral attack waiver provision nor does he claim that the waiver provision of that agreement is invalid.[2]

Moreover, pursuant to Federal Rule of Criminal Procedure 11, before accepting the guilty plea, I engaged in a plea colloquy with Jamison on April 27, 2006. During the plea colloquy, Jamison indicated that he was born on October 31, 1975, that he had completed his General Equivalency Diploma, that he did not have any physical or mental disabilities of any kind, and that he was not under the influence of any drugs or medication that hampered his ability to understand

---

[2] Jamison contends in his response to the motion to dismiss that the collateral attack waiver provision is "ambiguous and vague" and that it "does not specifically mention waiving a Constitutional [r]ight . . . to ineffective assistance of counsel." (Resp. Opp'n at 2.) However, his conclusory allegation that this provision is "ambiguous and vague," without more, is insufficient to support his claim that he did not understand the provision. Moreover, Jamison appears to ignore the more comprehensive waiver of any ineffective assistance of counsel claims found on page 11 of the plea agreement.

5

the courtroom proceedings. I reviewed with Jamison the constitutional rights he forfeited by pleading guilty, and Jamison indicated that he understood the rights he was giving up. Jamison affirmed that he had been given ample opportunity to consult with his attorney, that he had discussed and reviewed the indictment and the plea agreement with his attorney, and that he understood the charges and the maximum statutory penalty as to Count Two.[3] I specifically asked Jamison whether counsel had fully explained the terms of the plea agreement and Jamison, again, answered in the affirmative.[4] I also noted that Jamison would still be bound by his plea agreement even if the sentence imposed was more severe than Jamison expected. Jamison indicated that he understood.[5]

---

[3] Jamison complains that counsel "misadvised [him] of the maximum sentence he could receive under the guidelines if [he] proceeded to trial." (2255 Mot. at 8.) Jamison's allegation provides him no relief as the record reflects that he was informed of the possible maximum sentence on more than one occasion. Specifically, the United States Attorney informed Jamison that Count Two "carries a penalty of from five to forty years' incarceration." (Guilty Plea Hr'g Tr. at 3, April 27, 2006.) I later informed Jamison that "the maximum statutory penalty could be 40 years in prison" and that I "may sentence [him] up to the maximum provided by law." (Guilty Plea Hr'g Tr. at 11, 15.) Accordingly, any claim that he was unaware of the potential maximum sentence in this situation is contradicted by the record. Jamison further contends that counsel "did not inform him that pleading guilty to an indictment charging distribution of five grams or more of cocaine base would yield him a much larger sentence than the indictment charged." (Resp. Opp'n at 3.) This argument makes little sense as the indictment does not specify a sentence range as to any count. To the extent that Jamison means that his sentence was longer than indicated by the plea agreement, such a claim also lacks merit. The plea agreement clearly provides the mandatory minimum and maximum statutory penalties for each count and Jamison's sentence of 188 months is certainly not greater than the maximum penalty of 40 years imprisonment specified in the plea agreement as to Count Two.

[4] Jamison maintains in his § 2255 motion that counsel failed to adequately "inform" him about the provisions of the plea agreement, "did not full[y] explain the plea agreement, did not explain the possible consequences, and did not apprise him of developments." (2255 Mot. at 5; Resp. Opp'n at 3.) Jamison's sworn statements to this court during the Rule 11 Colloquy completely contradict these unsupported claims and Jamison provides no extraordinary circumstances from which I may infer that those sworn statements were false or coerced. Lemaster, 403 F.3d at 221-22.

[5] Jamison complains that counsel failed to inform him that he would most likely be sentenced as a career criminal and that he was "blind-sided and desceived [sic]" by the government because of "deceptive" and "ambiguous" language in paragraph 6 of the plea agreement. (Resp. Opp'n at 3; 2255 Mot. at 6.) Paragraph 6 provides, "I understand that because of my prior criminal record I may be treated as a 'Career Offender' under Guideline Section 4B1.1, that is, I have been previously convicted of at least two (2) felony drug offenses or crimes of violence." (Plea Agreement 4.) Jamison's complaints lack merit. First, regardless of what information counsel did or did not provide to Jamison concerning his potential to be treated as a career offender, I specifically noted and explained paragraph 6 of the plea agreement to Jamison during the Rule 11 Colloquy and Jamison indicated his understanding of that provision. Specifically, I stated, "Paragraph 6, Mr. Jamison, I guess the best way I can describe it, is a warning paragraph. And that tells you that, because of your prior criminal record, you may be treated as a career offender, which means that your category on the offense level would be increased substantially. Do you understand that?" (Guilty Plea Hr'g Tr. at 12.)

I also specifically explained Jamison's waiver of his right to collaterally attack the conviction; however, Jamison indicated that he did not understand the definition of a collateral attack. In response, I stated, "That means that, after you are convicted and sentenced, and . . . later on you are [sitting] in prison and you think something wrong has been done in your case and you want to file a habeas corpus to correct that error . . . you are giving up any right to do that." (Guilty Plea Hr'g Tr. at 14.) Jamison then indicated that he understood. Jamison denied that anyone had made any promise to him, outside the provisions of the plea agreement, or otherwise induced or forced him to plead guilty. I determined, at the conclusion of the plea colloquy, that Jamison's plea was knowing and voluntary. Therefore, I find that Jamison's representations at the plea hearing support a finding that the waivers in the written plea agreement were knowingly and voluntarily made. Accordingly, I conclude that Jamison's waiver of his right to bring a collateral attack under § 2255 is valid and enforceable.

Finding that the waiver is valid, I must now determine whether Jamison's claims are included within the scope of the waiver. After reviewing the record, I find that none of the factors that the United States Court of Appeals for the Fourth Circuit applied in Attar are applicable here. See Attar, 38 F.3d at 732-33. Jamison does not claim that his sentence of 188 months exceeded the statutory maximum for the charges for which he was convicted, nor does he allege that his sentence was premised on any constitutionally impermissible factor such as race. A claim of ineffective assistance of counsel only falls outside the scope of the collateral attack waiver if the defendant has been

---

Jamison answered in the affirmative. Moreover, I find that the language in paragraph 6 is far from "deceptive" or "ambiguous." Rather, it clearly informs Jamison that his criminal record reflects at least two felony drug offense or crimes of violence and that, consequently, he may be treated as a "Career Offender" under Guidelines Section 4B1.1. The language is straight-forward and Jamison implicitly took the risk that he "might" be sentenced as a Career Offender when he assented to the terms of the plea agreement.

7

completely deprived of counsel. Attar, 38 F.3d at 732-33. A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver. See Lemaster, 403 F.3d at 220 n.2. Therefore, Jamison's claims fall within the scope of the plea agreement waiver and are, thus, not cognizable claims for post conviction relief in a motion brought pursuant to § 2255.[6] Accordingly,

---

[6] Even assuming that Jamison's claims are excepted from the waiver in the plea agreement, they fail on the merits. Jamison first brings several ineffective assistance of counsel claims. Jamison must prove that counsel's representation fell below "an objective standard of reasonableness" and that, but for counsel's alleged errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Jamison fails to even allege, much less demonstrate, that he would have rejected the plea agreement and insisted on going to trial absent counsel's alleged errors. Regardless, all of his ineffective assistance of counsel claims lack merit. First, his claim that counsel failed to review the pre-sentence report with him and failed to make suggested objections to the pre-sentence report is contradicted by the record. I noted at the sentencing hearing on July 31, 2006, that I had received a letter from Jamison complaining that he had not received a copy of his pre-sentence report but that counsel had subsequently met with Jamison and reviewed the pre-sentence report. Indeed, counsel filed several objections to the report and raised those objections in open court at the sentencing hearing. Jamison fails to contradict this finding or provide any other "suggested objections" that counsel failed to raise. Moreover, Jamison's complaint that counsel failed to provide and review unspecified discovery material fails as Jamison does not allege what discovery material he was refused or how that material would have affected his plea. Similarly, Jamison fails to expound upon or provide any factual support for his claim that counsel failed to communication with him during the appeals process. Even if I assume that counsel's failure to communicate with Jamison constitutes deficient performance, Jamison fails, in this instance, to hurdle the prejudice prong of Strickland. Jamison fails to demonstrate that, but for counsel's failure to communicate more with him during his direct appeal, there is a reasonable probability the outcome of his case would have been different. See McCrae v. Blackburn, 793 F.2d 684 (6th Cir. 1986) (finding that lack of communication between counsel and appellant does not constitute ineffective assistance, without a showing that such resulted in prejudice to the appellant). Furthermore, Jamison's complaint that counsel waived his speedy trial rights against Jamison's wishes is without merit. Because counsel's decision to agree to a continuance is a tactical matter, I find that counsel's actions were not unreasonable nor was petitioner prejudiced. See Epperson v. Angelone, No. 01-CV-462, 2002 WL 32632095 (W.D. Va. Sept. 20, 2002) (citing Fitzgerald v. Thompson, 943 F.2d 463 (4th Cir. 1991) (finding that attorney's tactical decision was neither incompetent nor prejudicial)). Finally, Jamison's claims that counsel failed to inform Jamison that he would likely be sentenced as a career criminal and that counsel induced Jamison to plead guilty to an ambiguous plea agreement have already been addressed and found to be without merit. Jamison next complains that the government breached the plea agreement when it agreed not to file an enhancement under 21 U.S.C. § 851, but it ultimately failed to object to such an enhancement. This argument has no merit as the record reflects that no enhancement under 21 U.S.C. § 851 was filed in this case. Moreover, this specific claim has already been considered and dismissed by the United States Court of Appeals for the Fourth Circuit. A petitioner may not relitigate a claim which the Court of Appeals has already fully considered and decided on direct appeal. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Jamison's final claim, that his conviction was obtained in violation of 18 U.S.C. § 3162(a)(2), also fails as § 3162(a)(2) provides that "failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." Jamison failed to move for a dismissal prior to the entry of his plea of guilty. Accordingly, all of Jamison's claims fail to rise to the level of a constitutional violation and, therefore, such claims would not succeed even if they were not excepted from the waiver.

I will grant respondent's Motion to Dismiss and will deny Jamison's motion for relief pursuant to § 2255.

### IV.

"Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Jamison knowingly and intelligently agreed to waive his right to collaterally attack his sentence in exchange for several concessions made by the United States, and he was sentenced in the manner to which he agreed. The United States has adhered to its part of the plea bargain. Granting Jamison relief on the issues he has raised, under these circumstances, would unfairly deny the United States an important benefit of its bargain. Accordingly, I will grant the Motion to Dismiss. An appropriate Order shall be issued this day.

The Clerk of the Court is directed to send copies of this Memorandum Opinion and accompanying Order to petitioner and counsel of record for respondent.

**ENTER:** This 27th day of May, 2008

Senior United States District Judge